**In the Matter of John E. C. BUSCHMANN and Marilee Buschmann, Debtors.**

**John KAECKELL, Claimant,**

v.

**John E. C. BUSCHMANN and Marilee Buschmann, Respondents.**

**Bankruptcy No. 83–01678–W–13.**

United States Bankruptcy Court, W.D. Missouri.

May 15, 1984.

Ronald E. Partee, Kansas City, Mo., for John Kaeckell.

James H. Thompson, Jr., Kansas City, Mo., for debtors.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER ALLOWING CLAIMANT'S CLAIM IN THE SUM OF $8,000.00

DENNIS J. STEWART, Bankruptcy Judge.

The claimant seeks to have a claim allowed in these chapter 13 proceedings based upon his contractual right to a real estate broker's fee for selling the debtor's business to a third party who later returned the business to the debtor because of his inability to manage it. The debtor objects to the allowance of the claim on the grounds that it cannot be asserted as a matter of contract right when the contract on which it was based was later rescinded or terminated. The matter came on before the bankruptcy court for hearing on January 5, 1984, whereupon the claimant appeared personally and without counsel and the debtor John E. C. Buschmann appeared personally and by counsel, James H. Thompson, Jr., Esquire. The evidence which was then adduced showed that the claimant and debtor had formerly entered into an agreement whereby the claimant would sell the debtor's business and would, upon successful consummation of a sale, be paid a commission amounting to 10% of the purchase price but not less than $8,000. Subsequent to the entry of the parties into this agreement, the claimant succeeded in selling the property, but, as a result of a complicated arrangement which he agreed to, Mr. Kaeckell did not receive his commission, but rather loaned it to the debtors so that it could be applied against an existing mortgage on the sold property. In detail, Mr. Kaeckell located a ready, willing, and able buyer in the person of Robert Eustice. Mr. Eustice, pursuant to a contract for purchase and sale which he subsequently entered into with Mr. Buschmann, made an earnest money payment of $1,000.00 and a down payment of $19,000.00 upon taking over the business. This was done by means of a check made out jointly to Mr. Kaeckell and Mr. Buschmann. Mr. Kaeckell relinquished the entire check to Mr. Buschmann. It was agreed that $8,000 of it should be his broker's fee, but Mr. Kaeckell agreed to loan this to Mr. Buschmann so that it could be used, in part, to pay off a mortgage in the sum of $18,843. Mr. Eustice, in the meantime, after taking over operation of the business, according to Mr. Buschmann's testimony, "did not spend enough time there," with the result that his operations were not successful. After only 7 weeks of such operations, the buyer and the debtors agreed to terminate the contract for purchase and sale of the debtors' business and to restore the same to the possession and ownership of the debtor. No evidence was produced to demonstrate that this agreement for return of the business was accompanied by any intention to restore the *status quo*, such as must necessarily attend an agreement for mutual rescission of a contract. Rather, according to the evidence which was presented, the agreement for return of the business simply effected termination of the contract for purchase and sale, leaving buyer and seller in their respective positions as of the date of termination.

There is no evidence that the claimant and the debtors agreed that the contract between them for payment of the real estate commission should be rescinded at any time. Nevertheless, it is the position of the debtors that, under the prevalent practice in the real estate agent and brokerage trades, Mr. Kaeckell is in fact entitled to nothing. To support this contention, they have offered in evidence a document purporting to be a transcript of the former testimony of one Murl Talbott, who, in the transcript, is represented to state that he is "a franchisee of VR Business Brokers and ha(s) been for the past 18 months." He further states (1) that, if a purchaser made both an earnest money deposit of $1,000.00 and a down payment of $19,000.00, and the purchaser then failed to perform the contract for purchase and sale of real property, the buyer and the broker would split only the earnest money payment "or the broker would sue for the maximum limit of his commission" and (2) that, if the contract entered into by seller and purchaser is a lease arrangement with an option to pur-

chase, and the lease is forfeited by the prospective buyer before any exercise of the option to purchase, the broker is not entitled to any fee "unless in another separate agreement outside of this listing agreement or in a sales contract it provides that the seller would pay broker for his services performed." The court harbors some doubt as to the admissibility of this transcript of former testimony, although it was offered in evidence without any objection by the claimant, who declined to be represented by counsel.[1] Further, if admissible, even though the court agrees that contracts should be interpreted in the light of the custom and practice of the particular trade, the principles thereby evidenced are not totally applicable to the facts of the case at bar. The testimony of the claimant, which the court finds to be credible,[2] is to the effect that the agreement between debtors and their purchasers (the Eustices) was a simple contract of purchase and sale; that the contract was, moreover, fully or substantially performed in that there was a transfer of title subject to a security interest or mortgage retained by the seller debtors; and that, when the debtors went back into title and possession after 7 weeks of operations by the buyers, the buyers forfeited any claim to the $20,000 total of earnest money deposit and down payment.

It was further the testimony of the claimant Kaeckell, as found above, that, when he received the $19,000 check from Eustice, it was made out to both the debtors and himself as payees; that it was agreed at that time that $8,000 of the check thus received should be his broker's commission but would be *loaned* to the debtors so that a prior mortgage in the sum of $18,843 could be paid off; and that the loan has never been repaid to him.

From these facts, the court concludes that the claim of the claimant should be allowed in the sum of $8,000 on the separate and independent grounds that (1) the broker's fee of $8,000 is due and payable to claimant under the contract for purchase and sale of the business and (2) it is due and payable independently on the basis of the agreement entered into by Kaeckell and Buschmann at the time the former relinquished the $19,000 check to the latter with the agreement that $8,000 should be considered as a loan by the former to the latter and (3) it is due and payable under principles of equity under the equitable doctrine of "unjust enrichment."

As to the first ground of recovery, Mr. Kaeckell's credible testimony, as above recounted, establishes that the contract between the Buschmanns and Eustices was one of absolute purchase and sale rather than a lease with an option to purchase. "In determining whether an instrument is a lease or creates a relation other than that of lessor and lessee, the intention of the parties as ascertained from the instrument itself will govern. The same rules of construction are applicable as for other contracts in determining what is a lease, and in making a decision the court will give the instrument a reasonable construction, viewing the instrument as a whole, and will consider the circumstances surrounding the parties when the contract was made, and also a practical construction given the agreement by the parties." 51 C.J.S. Landlord and Tenant section 202(5), pp. 522–523 (1963). In this case, the unobjected-to testimony of claimant sufficiently establishes the character of the transaction as one of purchase and sale subject to the debtors' security interest.[3] Thus, according to custom and practice and the ancillary agreement between Kaeckell and Buschmann—

---

1. Virtually none of the prerequisites to the admission in evidence of former testimony have been demonstrated with respect to this item of evidence. See Rule 804(b)(1) of the Federal Rules of Evidence.

2. The court primarily bases its finding of credibility on the appearance and demeanor of the witness when he testified before the court. His appearance was that of a straightforward and ingenuous person who was telling the truth.

3. Even though the form may have had some indications otherwise, the testimony of the claimant establishes that the substance of the agreement was one for purchase and sale.

which is also established by Kaeckell's unobjected-to testimony [4]—Kaeckell is entitled to the $8,000 fee. This fee was intended to be paid him, according to his unobjected-to testimony, from the $19,000 check issued by Eustice to Kaeckell and Buschmann.

■ Separately and independently, the unobjected-to testimony of Mr. Kaeckell also establishes that he loaned that same $8,000.00 to the debtors and that they agreed to repay it to him. The $8,000 claim should therefore be allowed on the basis of the agreement to repay.

The court recognizes that the two foregoing grounds for allowing the claim depend primarily upon the credibility of the claimant's testimony. But prior decisions in the field of bankruptcy law vouchsafe that this is a valid basis for decision and one which the appellate courts indulge. See, e.g., *In re Windle*, 653 F.2d 328, 331 (8th Cir.1981) ("The deference owed by appellate courts to finders of fact is at its highest where the issue turns on the resolution of a direct conflict between live witnesses.").

■ But, even without any actual governing contract, Mr. Kaeckell should still be allowed a claim for his broker's fee when he in fact found a willing, ready, and able buyer in the person of Robert Eustice and when the labor of finding this buyer resulted in a $20,000 benefit to the debtors in return for being out of the premises for only a brief period of 7 weeks. "The essential elements of quasi contract (or unjust enrichment) are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." 17 C.J.S. Contracts § 6, p. 572 (1963). In this case, the benefit which has been conferred upon the debtors through the claimant's honest efforts is obvious, as is the applicability of the doctrine of unjust enrichment.

Therefore, the claim of the claimant must be allowed in the sum of $8,000. The testimony of the claimant establishes that this is the value placed on the labor by the parties.

For the foregoing separate and independent reasons, it is hereby

ORDERED that the claimant's claim be, and it is hereby, allowed in the sum of $8,000 as a general unsecured claim.